EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Bárbara Estrella y Richard Monge Recurridos v. Kenia Michelle Figueroa Guerra Peticionario | Certiorari 2007 TSPR 55 170 DPR _____ |
|---|---|

Número del Caso: CC-2003-521

Fecha: 26 de marzo de 2007

Tribunal de Apelaciones:

Región Judicial Carolina-Fajardo

Juez Ponente:

Hon. José Miranda de Hostos

Abogado de la Parte Peticionaria:

Lcdo. Santos Rivera Martínez

Abogada de la Parte Recurrida:

Lcda. Ana López Prieto

Oficina del Procurador General:

Lcdo. Guillermo A. Mangual Amador
Procurador General Auxiliar

Abogadas del Departamento de la Familia:

Lcda. Marta I. Ojeda Rodríguez
Lcda. Sonny M. Arroyo Pedró

Materia: Adopción

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Bárbara Estrella y Richard Monge
      Recurridos

                        CC-2003-521 *Certiorari*

       v.


Kenia Michelle Figueroa Guerra
      Peticionario


Opinión del Tribunal emitida por la Jueza Asociada SEÑORA FIOL MATTA


En San Juan, Puerto Rico, a 26 de marzo de 2007.

El presente recurso nos exige delimitar la relación entre dos disposiciones medulares sobre derecho de menores, una relativa a la adopción y la otra a la realización de esfuerzos razonables para la reunificación familiar. En esencia debemos determinar si puede presentarse una petición de adopción cuando aún está en curso el proceso de esfuerzos razonables para reunificación familiar y el menor aún está bajo la patria potestad de sus padres biológicos.

I.

El 2 de octubre de 2002, Bárbara Estrella y Richard Monge presentaron una petición de privación de patria potestad y adopción de la menor GLEF.[1] La madre biológica de la menor y parte interventora, señora Kenia M. Figueroa Guerra, fue emplazada y citada para una vista que habría de celebrarse en diciembre de 2002.[2] Surge de la petición que el Departamento de la Familia ostenta la custodia provisional de la menor y les había entregado la niña a los esposos Estrella Monge como custodios de *facto* cuando ésta tenía cuatro meses de nacida. El 5 de noviembre de 2002 la señora Estrella y el señor Monge solicitaron la consolidación de su petición de adopción con un pleito de privación de custodia que había presentado el Departamento de Familia en contra de la madre biológica de la menor. En su moción los esposos Estrella y Monge argumentaron que el pleito principal

---

[1] La petición se hizo al amparo de la Ley para el Procedimiento especial de Adopción, Ley núm. 9 de 19 de enero de 1995, 32 L.P.R.A. secs. 2699 2699s. La petición se notificó a la Procuradora de Relaciones de Familia de Carolina y a la Unidad de Adopción de Carolina, aunque se emplazó únicamente a la madre biológica de la menor, Kenia Michelle Figueroa. Véase páginas 26 y 27 del apéndice del recurso.

[2] En esa citación se le apercibió que de no comparecer a la vista de primera comparecencia el Tribunal podría decretar la adopción solicitada en la petición sin más citarle ni oírle.

era el de adopción ya que involucraba la privación de la patria potestad sobre la menor. Además, invocaron el artículo 166B del Código Civil, 31 L.P.R.A. sec. 634b, como fundamento jurídico para la privación de patria potestad de la menor. También señalaron que ambos casos estaban regidos por la intención legislativa de proteger el mejor interés de los menores. Por eso, las agencias del Estado no podían utilizar a los menores como instrumentos para la rehabilitación de sus padres.

Según los señores Estrella y Monge, la Ley núm. 9 de 19 de enero de 1995, llamada Ley de Adopción, 32 L.P.R.A. secs. 2699-2699s creó un procedimiento de adopción expedito para permitir que los menores pudieran encontrar un hogar seguro de la forma más rápida posible. Igualmente, la Ley núm. 342 de 16 de diciembre de 1999, conocida como la Ley para el amparo de los menores en el siglo XXI, 8 L.P.R.A. sec. 441-443u[3], le requería al Departamento de la Familia solicitar la privación de patria potestad de la menor si se daban las circunstancias requeridas para ello. Sin embargo, en este caso, según adujeron, aún cuando

---

[3] Dicha Ley fue derogada por la Ley núm. 177 del 1 de agosto de 2003, llamada Ley para el bienestar y la protección integral de la niñez, 8 L.P.R.A. secs. 444-450m.

se dieron esas circunstancias, la agencia no presentó dicha solicitud.

El 2 de diciembre de 2002 las Procuradoras Especiales de Relaciones de Familia presentaron una "Moción en oposición a moción solicitando consolidación". Alegaron que la adopción no estaba madura para su adjudicación final porque a la fecha de la petición no había concluido el procedimiento de liberación del menor en el caso de maltrato y no se había adjudicado de manera final y firme la tutela de la menor al Departamento de la Familia.[4] Entendían que hasta que ello no sucediera no podía presentarse el informe social pericial con recomendaciones sobre si conviene o no a los mejores intereses de la menor el que ésta permanezca bajo la custodia de la madre biológica y bajo la supervisión del Departamento o llevar a cabo la adopción.

Las Procuradoras de Familia también argumentaron que el caso de adopción no es el primario con relación a la menor afectada. A su entender, el caso primario es el que se presenta al amparo de la Ley núm. 342, *supra*, actual Ley núm. 177, 8 L.P.R.A. secs. 444-450m, relacionado con los esfuerzos razonables para la

---

[4] El Departamento de la Familia ostenta la custodia provisional de la menor, la cual obtuvo mediante un procedimiento al amparo de la Ley núm. 342, *supra*.

reunificación familiar.[5] Hacen hincapié en que en los casos de adopción se advierte a los promovidos que el procedimiento podría conllevar la privación de custodia y patria potestad y que esa también puede ser la consecuencia si se ve el procedimiento en rebeldía. Aclaran que si bien el proceso de esfuerzos razonables puede desembocar en la privación de custodia y patria potestad, la ley especial aplicable a ese proceso prescribe procedimientos previos particulares. Por eso, recomendaron la desestimación del procedimiento de adopción.

El 11 de diciembre de 2002 el Tribunal de Primera Instancia denegó la moción de consolidación y el 18 de diciembre de 2002 la señora Figueroa, madre biológica de la menor, solicitó la desestimación del pleito de adopción, en consideración al procedimiento previo instado por el Departamento de la Familia, bajo la Ley núm. 342 (actual Ley núm. 177). Alegó que en el pleito

---

[5] Según la actual Ley núm. 177, los esfuerzos razonables incluyen "todas aquellas actividades y servicios que se ofrecen al padre, a la madre o persona responsable de un/a menor y a los propios menores dentro y fuera del hogar, en coordinación con entidades públicas y privadas, para garantizar su seguridad y bienestar. Estos esfuerzos van dirigidos a proteger al menor, a proteger al adulto no maltratante, a educar al maltratante y a mantener el ambiente en que el menor se desenvuelve lo más inalterado posible como las metas de los procesos de ayuda a la familia y a lograr una alternativa permanente de ubicación cuando no sea posible la reunificación familiar". 8 L.P.R.A. sec. 444(n).

instado por el hogar custodio estaba ausente el Departamento de la Familia, que era una parte indispensable, y que dicha entidad no había instado un procedimiento de privación de custodia. Arguyó, además, que en virtud del procedimiento bajo la Ley núm. 342, estaba sometida a un plan de servicios[6] cuyo objetivo sería la reunificación familiar, y que aún no se habían hecho los esfuerzos razonables para hacer posible el regreso de la menor al hogar biológico. Además, la señora Figueroa llamó la atención a que, según alegado por los custodios de *facto*, éstos han recibido promesas de que la menor sería liberada y se les permitiría adoptarla, por lo que el proceso de privación de custodia se vería afectado por la intención de facilitar la adopción de la menor.

Los custodios de facto se opusieron a la desestimación del procedimiento de adopción. Entre otras cosas, argumentaron que habían notificado al Departamento de la Familia conforme a la ley especial

---

[6] Al momento de los hechos la señora Figueroa estaba cumpliendo el plan en el Hogar CREA de Damas. La actual Ley núm. 177 define "plan de servicio" como aquella "organización sistemática de las metas, objetivos y actividades enmarcadas en el tiempo, que son el resultado de un proceso de acopio de información y evaluación tomando como punto de partida las fortalezas de los miembros de la familia para superar sus necesidades y que darán dirección a la atención social del/a menor y su familia". 8 L.P.R.A. sec. 444(dd).

aplicable.[7] También, alegaron que hay prueba suficiente para privar a la madre de la patria potestad de la menor. Acusaron a la madre biológica de la menor de haber tenido más de una recaída y de incitar a sus compañeras de Hogar Crea a usar drogas. Señalaron que el comportamiento de la madre demuestra su falta de compromiso para cumplir con el plan de servicios. Por último, argumentaron que la Ley núm. 342 (actual Ley 177) no se aplica al procedimiento de adopción y, en la alternativa, alegaron que ésta no impide que el hogar de crianza inicie el procedimiento de privación de patria potestad y adopción.

El 11 de diciembre de 2002 el TPI se negó a desestimar el pleito de adopción y señaló una conferencia sobre el estado de los procedimientos. La señora Figueroa recurrió al Tribunal de Circuito de Apelaciones, argumentando que al no desestimar el procedimiento de adopción, el Tribunal de Primera Instancia faltó a la política pública y a los objetivos de la legislación sobre esfuerzos razonables.

---

[7] Se refieren al artículo 4 de la Ley de adopción que requiere que se notifique a la unidad de adopción del Departamento de la Familia para que rinda un informe. 32 L.P.R.A. sec. 2699c(3).

Luego de varios incidentes procesales, el Tribunal de Apelaciones resolvió que el TPI no había errado al tramitar y consolidar los procedimientos sobre privación de patria potestad y custodia con el de adopción porque, a su entender, el Art. 9 de la Ley de Adopción, *supra*, lo permitía. El tribunal apelativo recurrió a los principios de hermenéutica sobre la interpretación de las leyes que son claras y libres de ambigüedad y el uso corriente del lenguaje. Invocó la política pública a favor de procedimientos expeditos declarada en la Ley de Adopción y explicó las provisiones procesales para cuando no se ha privado de la patria potestad a los padres del adoptando previamente ni éstos han renunciado voluntariamente a ella. Hizo hincapié el foro apelativo en la participación activa que tiene el Departamento de la Familia en todo proceso de adopción y de privación de patria potestad, puesto que la agencia tiene que rendir un informe social pericial al tribunal, con recomendaciones específicas sobre lo que más le convenga a los intereses del menor. Concluyó que la alegación de falta de notificación al Departamento de la Familia sobre el procedimiento de adopción era frívola puesto que se requiere dicha notificación para que se pueda someter el informe social pericial.

El Tribunal de Apelaciones concluyó que el foro de instancia había resuelto correctamente al negarse a dilucidar en procesos distintos la solicitud de privación de patria potestad y la de adopción, y al resolver que esta última reclamación no era prematura. Aclaró que cuando se tramite la privación de patria potestad y custodia conjuntamente con la adopción debe celebrarse una vista plenaria en la que los padres del menor estén representados por abogado y se adjudique primeramente en los méritos la patria potestad. Una vez resuelto esto, se debe continuar el proceso de adopción.

En su resolución, el foro apelativo no atendió la aplicación de la Ley de Adopción en los casos como el de autos, en los cuales se ha comenzado un procedimiento bajo la Ley núm. 342, *supra*, (actual Ley 177, *supra*) en progreso.

Inconforme aún, la señora Figueroa Guerra recurre de esta decisión y nos plantea que los foros de instancia y apelativo cometieron seis errores que pueden resumirse en dos. En primer lugar señala la madre de la menor que el tribunal apelativo incidió al no atender el conflicto entre las políticas públicas de la Ley de Adopción y la Ley para el amparo de menores del siglo XXI, actual Ley para el bienestar y

la protección integral de la niñez. Al no hacerlo, se dio curso a un procedimiento de adopción cuando no había concluido el trámite de privación de patria potestad. En segundo lugar arguyó que el tribunal apelativo erró al concluir que el Departamento de la Familia no era parte indispensable y que fue notificado conforme a derecho.[8]

---

[8] La peticionaria presentó los siguientes señalamientos de error:

> 1. Erró el Honorable Tribunal de Circuito de Apelaciones al no discutir el conflicto que existe entre dos leyes especiales como la Ley núm. 9 de 19 de enero de 1995, conocida como la Ley de Adopción" y la Ley 342 de 16 de diciembre de 1999, conocida como "Ley para el Amparo de Menores del Siglo XXI", con objetivos distintos.

> 2. Erró el Honorable Tribunal de Circuito de Apelaciones al determinar que no es prematura la petición de adopción sin preguntarse, que sucedería de concederse ésta, con el proceso de Ley 342 al no haber finalizado el mismo.

> 3. Erró el Honorable Tribunal de Circuito de Apelaciones al entender que procede la adopción sin haber sido privada de custodia ni patria potestad la madre biológica en el procedimiento instado bajo la Ley 342.

> 4. Erró el Honorable Tribunal e Circuito de Apelaciones al determinar que el Departamento de Familia no es parte indispensable en un proceso de adopción quien es el que ostenta la custodia provisional de la menor bajo el procedimiento de Ley 342.

A los fines de evaluar el presente recurso concedimos término al Departamento de la Familia para que se expresara. Así lo hizo y en su comparecencia argumentó que debía desestimarse la petición de privación de patria potestad y adopción a la luz del derecho vigente. Reafirmó el Departamento la incompatibilidad entre el trámite al amparo de la Ley 342, actual 177, y la Ley de adopción.

Como se observa, el caso de autos requiere que determinemos la relación entre dos disposiciones medulares sobre el derecho de menores en Puerto Rico. Por un lado, la Ley núm. 177, llamada Ley para el bienestar y la protección integral de la niñez, que sustituyó a la Ley 342, promueve los esfuerzos

---

5. Erró el Honorable Tribunal de Circuito de Apelaciones al entender que la Notificación a la Unidad de Adopción del Departamento de la Familia a los fines de que se cumpla con el deber ministerial de rendir un informe es suficiente para ser incluido como parte obviando la notificación según la Regla 4.4 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 16"

6. Erró el Honorable Tribunal de Circuito de Apelaciones por entender que se viola el Canon 18 y es frívola una acción que se insta reclamando derechos reconocidos en el procedimiento civil y constitucional.

razonables para la reunificación familiar y preservación de los lazos biológicos. Por el otro, la Ley de Adopción favorece la ruptura expedita de los lazos biológicos en aras a la creación de una nueva y mejor relación paterno filial no determinada por la consanguinidad. La ponderación de ambas medidas debe hacerse, claro está, a la luz de nuestra política pública a favor del bienestar de los menores que es la piedra angular de ambas legislaciones. Hemos examinado ambas políticas públicas, los procedimientos creados para lograrlas y nuestros precedentes y nos persuade el argumento de las Procuradoras de Familia y de la parte peticionaria. Entendemos que existe un conflicto entre los procedimientos y que el caso primario es el de maltrato. Por consiguiente, la petición de adopción es prematura y debe desestimarse.

## II.

Como cuestión de umbral es necesario señalar que los hechos que dan origen a la presente controversia ocurrieron mientras estaba vigente la Ley núm. 342 de 16 de diciembre de 1999, llamada Ley para el amparo de los menores en el siglo XXI. No obstante, esta ley fue derogada por la Ley núm. 177 de 1 de agosto de 2003, hoy vigente. Respecto a esto es menester aclarar tres aspectos.

En primer lugar, la Ley núm. 342 disponía para la agilización de los procedimientos de privación de custodia y/o patria potestad en aquellos casos en que no pueda garantizarse la seguridad y el bienestar de un menor, además de eximir al Estado, en determinadas circunstancias, de llevar a cabo esfuerzos razonables para preservar la integridad familiar. En cambio, la Ley núm. 177, reenfoca la política pública en Puerto Rico hacia la concertación de esfuerzos privados, comunitarios, familiares y gubernamentales con énfasis en la reunificación y el fortalecimiento de las familias. A pesar de que ambas leyes dan énfasis a diferentes medidas para la protección y el bienestar de los menores, éstas son muy similares para efectos del asunto específico ante nuestra consideración.[9]

---

[9] En términos generales, algunos de los principales cambios traídos por la Ley núm. 177, *supra,* son los siguientes: se pretende eliminar el señalamiento doble como víctimas de los menores maltratados y sus madres cuando ellas también son víctimas de violencia; se establecen términos más largos y realistas para completar los esfuerzos razonables para reunificar las familias; se incluyen disposiciones especificas para la necesaria coordinación interagencial y para la concertación de esfuerzos multisectoriales en apoyo a la protección de la niñez; se faculta al Departamento de la Familia para que pueda realizar esfuerzos concretos de prevención y para disponer de herramientas más efectivas tanto para enfrentar las consecuencias del maltrato de menores, como el maltrato institucional; se reconoce la aportación que pueden y quieren realizar grupos no gubernamentales a la atención del maltrato y se establecen obligaciones especificas para que las agencias del gobierno puedan

Recientemente, en *Ex Parte Rivera Báez*, 2007 T.S.P.R.

___, res. 26 de marzo de 2007, explicamos

detalladamente la evolución de la política pública

sobre el maltrato de menores en Puerto Rico y su

énfasis en proteger de la forma más adecuada los

mejores intereses y el bienestar de éstos.

En segundo lugar, se debe resaltar que las medidas

dispositivas de ambas leyes sobre la concertación de

esfuerzos razonables para la reunificación familiar

son esencialmente procesales; por eso, los

procedimientos sobre esfuerzos razonables en este caso

se regirían por la ley vigente, Ley núm. 177 y no por

la ya derogada Ley núm. 342.[10] Por último, para

---

enfrentarse a este problema. *Véase* Informe Sobre el P. del S. 2285 de 22 de junio de 2003, en la pág. 20.

[10]    El principio general sobre aplicación temporal de las leyes está establecido en el artículo 3 de nuestro Código Civil, 31 L.P.R.A. sec. 3, que dispone que las leyes no tendrán efecto retroactivo, a lo cual la interpretación doctrinal ha reconocido históricamente varias excepciones. Así, Díez-Picazo y Antonio Gullón recalcan que "la doctrina y la jurisprudencia nos enseñan... que existen casos en los cuales la [aplicación retroactiva] de la nueva ley viene impuesta de manera tácita". Entre estos casos se encuentran las "normas meramente interpretativas", las "disposiciones de carácter complementario, dictadas para el desarrollo o mejor cumplimiento de una disposición anterior" y "las normas de carácter procesal". Esto es así ya que "si el proceso se va desarrollando a través de una serie de actos, éstos deben conformarse a la ley existente en el momento de su realización, sin perjuicio de respetar los efectos jurídicos nacidos de actos procesales ya completados cuando se pone en vigor la nueva legislación". L. Díez-Picazo y A. Gullón, Sistema De Derecho Civil, 9na. ed. Madrid, Editorial Tecnos, 1997, Volumen I, págs. 115-116.

propósitos de nuestra discusión y la mejor comprensión de este asunto, nos referiremos consistentemente a ambas disposiciones. Dicho esto pasemos a atender de lleno nuestra controversia.

### A. La política pública sobre esfuerzos razonables para la reunificación familiar.

La Ley para el bienestar y la protección integral de la niñez, al igual que sus antecesoras, la Ley para el amparo de menores en el siglo XXI de 1999 y la Ley de Protección de Menores de 1980, surge como respuesta a la trágica realidad vivida por muchos menores en Puerto Rico que son y han sido víctimas de abusos por aquellos que vienen llamados a cuidarlos. Esta legislación establece un procedimiento dirigido a velar por el mejor bienestar de los menores al tiempo que propende a la rehabilitación de los padres para que éstos puedan ejercer su deber correctamente. Esta ley lleva implícito un delicado balance entre el derecho constitucional que tienen los padres a criar a sus hijos y el derecho de estos últimos a una vida plena. Es en el contexto de éste delicado balance que venimos a interpretar esta normativa.

La Ley 177 tiene como objetivo principal la protección de los menores promoviendo la rehabilitación de toda la familia, tanto los miembros

maltratados como los maltratantes. Así, declara como política pública el

> asegurar el mejor interés, la protección y bienestar integral de la infancia y la adolescencia, y que en el deber de asegurar ese bienestar, deben proveerse oportunidades y **esfuerzos razonables** que permitan conservar los vínculos familiares... cuando ello no les perjudique. Además, cuando haya sido necesaria la protección mediante la remoción debe facilitarse la oportunidad de **reunificar** al menor con su familia, siempre que sea en su mejor interés. Artículo 3 de la Ley 177, *supra*, 8 L.P.R.A. § 444. (Énfasis Suplido.)

De esa forma, se enuncia una política a favor de la reunificación familiar y de la realización de esfuerzos razonables para lograrla, limitada por el objetivo supremo de velar por el bienestar y los mejores intereses de los menores. Esta política tiene un extenso trasfondo histórico y se ha ido fortaleciendo con el paso del tiempo. Así, por ejemplo, ya en la Exposición de Motivos de la Ley núm. 342, *supra*, antecesora de la vigente Ley 177, se señaló que:

> Mediante esta Ley, se reenfoca la política pública del Estado respecto al maltrato a menores, reconociendo como consideración prevaleciente el mejor bienestar del menor y que el derecho a la unidad familiar está limitado por el derecho que tienen éstos a estar protegidos del maltrato y la negligencia....

Igualmente, el artículo 3 de dicha ley añadía como intención legislativa el que "esta Ley provea para la privación de la patria potestad en el menor término posible **luego de que los esfuerzos de rehabilitación y reunificación han *[sic]* sido descontinuados** y la privación resulte en el mejor interés del menor". (Énfasis suplido.)

Estas expresiones legislativas se dan al abrigo de la normativa federal sobre adopción y protección familiar y tienen como fundamento el derecho constitucional de los padres sobre la crianza de sus hijos. Este derecho constitucional se refiere al hecho de que los padres de "ordinario tienen derecho a decidir sobre el cuido, la custodia y el control de sus hijos". Rivera Aponte v. Morales Martínez, 2006 T.S.P.R. 32, en la pág. 12. citando a Rexach v. Ramírez Vélez, 2004 TSPR 97; Washington v. Glucksberg, 521 U.S. 702, 720 (1997); Quillon v. Walcott, 434 U.S. 246, 255 (1978); Stanley v. Illinois, 405 U.S. 645, 651 (1972); Wisconsin v. Yoder, 406 U.S. 205, 232 (1972). Claro está, este derecho no es absoluto y puede ser limitado en aras al interés apremiante del Estado en proteger el bienestar de los menores. *Id*.

En Santosky v. Kramer, 455 U.S. 745, 753 (1981) se señaló lo siguiente:

La ausencia de controversia refleja el reconocimiento por esta Corte a través de la historia de que la libertad de tomar decisiones personales en cuestiones de la vida familiar es un interés libertario fundamental protegido por la decimocuarta enmienda… El interés libertario fundamental de los padres biológicos en el cuidado, custodia y manejo de sus hijos no se evapora sencillamente porque no han sido padres modelos o han perdido la custodia de sus hijos temporeramente en beneficio del Estado. Aún cuando las relaciones de sangre sean tirantes, los padres retienen un interés vital en prevenir la destrucción irremediable de su vida familiar…[11]

En cuanto a la legislación federal, ya en Pueblo de Puerto Rico en interés de los menores R.P.S., M.P.S. y C.J.N.S., 134 D.P.R. 123 (1993), resolvimos que la "Adoption Assistance and Child Welfare Act" de 1980[12] aplicaba a Puerto Rico por disposición del

---

[11] Santosky v. Kramer, 455 U.S. 745, 753 (1981:

The absence of dispute reflected this Court's historical recognition that freedom of personal choice in matters of family life is a fundamental liberty interest protected by the Fourteenth Amendment.[…] The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State. Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life[...].

[12] Ley Pública 96-272 de 17 de junio de 1980, 42 U.S.C. Secs. 620-628, 670-676.

Congreso. Asimismo, en Departamento de la Familia v. Soto, et al. 147 D.P.R. 618 (1999) interpretamos la aplicación en nuestra jurisdicción de la Adoption and Safe Families Act de 1997,[13] que enmendó el mencionado estatuto de 1980. Explicamos entonces que estas leyes se originan por la preocupación del gobierno ante la situación de menores que al ser víctimas de maltrato son reubicados de tiempo en tiempo en diferentes hogares sustitutos. Esta práctica impide la rehabilitación familiar y provoca mayor inestabilidad en los años formativos de dichos menores, ocasionándoles daños irreparables.

Las leyes federales antes mencionadas establecen ciertos beneficios para los estados, condicionados al cumplimiento con la política de esfuerzos razonables. A ese fin, exigen que las distintas jurisdicciones demuestren que han realizado esfuerzos razonables para posibilitar el regreso del menor a su hogar biológico, antes de ubicarlo en un hogar sustituto. Este requisito puede obviarse en ciertas circunstancias graves como el abandono, la tortura, el abuso crónico y el abuso sexual, entre otras. Al analizar la legislación federal en Departamento de la Familia v.

---

[13] Ley Pública núm. 105-89 de 19 de noviembre de 1997, 111 Stat. 2115.

Soto, et al, *supra*, señalamos igualmente que la realización de los esfuerzos razonables tiene carácter mandatorio pero es discrecional su implementación particular en cada estado.

Al comparar la "Adoption Assistance and Child Welfare Act" de 1980 con la "Adoption and Safe Families Act" de 1997 recalcamos que la ley de 1997 no "desvirtúa la esencia del requisito de que el Estado debe realizar esfuerzos razonables por devolverle a los padres biológicos el cuido y custodia de los hijos que fueron removidos" temporalmente de la familia. Departamento de la Familia v. Soto, el al. *supra,* pág. 636. Asimismo advertimos que dichas legislaciones, al igual que la ley local, en ese entonces la Ley núm. 75 de 28 de mayo de 1980, conocida como la Ley de Protección de Menores, tienen como denominador común, "además del mejor bienestar de los menores, el interés por fortalecer los vínculos familiares entre los padres biológicos y sus hijos". Departamento de la Familia v. Soto, el al. *supra,* pág. 636.

Dicho esto, examinemos el procedimiento específico sobre esfuerzos razonables dispuesto por la Ley núm. 177.

**B. Procedimiento de esfuerzos razonables.**

El artículo 4 de la actual Ley núm. 177, 8 L.P.R.A. sec. 444a,[14] dispone, entre otras cosas, que el Departamento de la Familia investigará las situaciones de maltrato, en sus modalidades de maltrato institucional, maltrato por negligencia y/o maltrato por negligencia institucional. Asimismo tendrá la responsabilidad primaria de realizar los esfuerzos necesarios mediante programas dirigidos a la prevención, identificación, investigación y tratamiento de las situaciones de maltrato, maltrato institucional, maltrato por negligencia y/o maltrato por negligencia institucional.

El artículo 31 de la actual Ley núm. 177, 8 L.P.R.A. sec. 447[15], faculta al Departamento de la Familia a comparecer ante el Tribunal de Primera Instancia cuando surja de su investigación inicial que existe una situación de maltrato. Asimismo le otorga jurisdicción al Tribunal para que emita órdenes de protección, otorgue custodia de emergencia, provisional o permanente, o prive del ejercicio de patria potestad al padre o la madre según sea solicitado. En el esquema de la nueva legislación

---

[14] Anterior artículo 28 de la Ley núm. 342 de 1999.

[15] Anterior artículo 35 de la Ley núm. 342 de 1999.

esta comparecencia inicia, de ordinario, el procedimiento judicial encaminado a atender el maltrato a menores.

En cualquier acción judicial en la que se determine que hubo maltrato, el tribunal resolverá a base del mejor interés del menor y podrá tomar una o varias de las medidas provistas en el artículo 43 de la Ley Núm 177, 8 L.P.R.A. 4471.[16] Entre ellas, podrá privar provisionalmente de la custodia sobre el menor al padre, a la madre o a la persona responsable el bienestar del menor. También podrá otorgar la custodia del menor a una familia o persona que el tribunal estime conveniente, siempre y cuando estas personas estén autorizadas para ello por el Departamento de la Familia. Se dispone, por último, que el tribunal podrá tomar cualquier otra determinación necesaria para la protección del mejor interés del menor, incluyendo el privar de la patria potestad a ambos padres conjuntamente, por separado, o a uno solo, cuando se pruebe una de las causales que establece nuestro ordenamiento jurídico para ello.[17]

---

[16] Anterior artículo 36 de la Ley núm. 342 de 1999.

[17] El lenguaje anterior del artículo 36 de la Ley núm. 342 mencionaba específicamente al artículo 166a del Código Civil de Puerto Rico como guía para la suspensión de la patria potestad. En la actual redacción se utiliza el criterio más general de

El artículo 47 de la Ley núm. 177, 8 L.P.R.A. sec. 447p, dispone por su parte que los hogares de crianza que hayan tenido bajo su cuidado a un menor por un período mayor de un año, "podrán ser escuchados, a discreción del tribunal, en cualquier procedimiento de protección a este menor que vive o vivió en su hogar, **pero no serán considerados parte del mismo**" (Énfasis Suplido). El tribunal hará una determinación respecto a la solicitud tomando en consideración el mejor interés del menor.[18]

El artículo 50 de la Ley núm. 177, 8 L.P.R.A. sec. 447s establece que una vez se haya **removido** a un menor de su hogar, "se realizarán esfuerzos razonables para reunificar al menor con su familia por un período que no excederá de los doce (12) meses".[19] Allí también se prescriben los criterios que serán utilizados para

---

"causales de nuestro ordenamiento jurídico por las cuales privar, restringir o suspender la patria potestad".

[18] En la redacción anterior se disponía que los padres de crianza que hubieran tenido bajo su cuido a un menor por un período mayor de doce (12) meses serían escuchados en todos los casos, si éstos así solicitaban. Es decir, que la redacción actual otorga al tribunal una discreción que antes no tenía para determinar si los custodios de *facto* deben ser escuchados en el procedimiento judicial.

[19] La versión anterior de esta disposición, el artículo 46 de la Ley núm. 342, indicaba que "luego de éste haber sido removido del mismo, se realizarán esfuerzos razonables por un período que no excederá de los seis (6) meses siguientes a la remoción para reintegrar al menor de forma segura al hogar".

concluir si se han realizado estos esfuerzos razonables. Entre otros factores se tendrán que examinar:

(a) los servicios ofrecidos o provistos por el Departamento.

(b) la diligencia de la agencia al hacer los servicios disponibles o accesibles al padre, la madre o persona responsable del bienestar del menor.

(c) los intentos anteriores de la agencia para intervenir o proveer servicios.

(d) las razones por las cuales otros servicios o esfuerzos para mantener al menor en su hogar no progresaron.

(e) el plan de Permanencia establecido inmediatamente luego de la remoción.

(f) el ofrecimiento de servicios de apoyo para facilitar el que la familia esté en disposición de recibir los servicios a los cuales fue referida.

(g) el seguimiento ofrecido a los referidos realizados, para los menores y para el padre y/o la madre.

(h) la discusión del plan de servicios con la familia, así como la entrega a ésta de copia del plan y el seguimiento al mismo.

(i) la accesibilidad de los servicios coordinados para la familia.

(j) el establecimiento de un plan de visitas materno/paterno filiales.

(k) el tiempo provisto para cumplir con el plan de servicios.

A continuación, en el artículo 53 de la antes Ley núm. 177, 8 L.P.R.A. sec. 447v, el legislador regula la acción de privación de patria potestad. En primer lugar, faculta al Departamento de la Familia a presentar dicha petición, y a renglón seguido detalla las circunstancias en que podrá hacerlo. Cabe resaltar las siguientes:

(c) El tribunal ha hecho una determinación conforme a las disposiciones de este capitulo de que **no procede realizar esfuerzos razonables** y ordena que no se presten servicios de reunificación.

(d) El tribunal determina que el padre y/o la madre no está dispuesto o es incapaz de tomar responsabilidad y proteger al menor de riesgos a su salud e integridad física, mental, emocional y/o sexual y **estas circunstancias no cambiarán** dentro de un periodo de doce (12) meses de haberse iniciado los procedimientos según la evidencia presentada en el caso.

(e) El tribunal determina que el padre y/o la madre no ha **hecho esfuerzos de buena fe** para rehabilitarse y reunirse con el menor. (Énfasis suplido.)

## C. El procedimiento de adopción

Veamos ahora la ley vigente en materia de adopción. En cuanto a esto, la Ley de Adopción de 1995 establece como política pública lo siguiente:

(1) El reconocer al Pueblo de Puerto Rico las más plenas facultades para, en casos apropiados, dar en adopción niños que están bajo su custodia y tutela y **cuyos padres hayan sido privados de la patria potestad** y custodia cuando así lo requiera el bienestar y mejor interés de los menores o incapacitados.

(2) El facilitar en la forma más liberal y amplia posible dentro del esquema jurídico que rige en Puerto Rico los procedimientos de adopción, proveyendo para un procedimiento simple, sencillo y expedito **cuyo trámite total no exceda de ciento veinte (120) días** desde su inicio hasta su resolución final, además de simplificar y liberalizar sustancialmente los requisitos de ley para la emisión de decretos de adopción.

(3) La firme aplicación de este estatuto envuelve un interés social apremiante, de la más alta importancia, considerando la época contemporánea en que por razones evidentemente imputables a padres irresponsables y a otros sectores de la sociedad hay miles de niños maltratados, desamparados, abandonados y sin hogar alguno.

(4) **Es responsabilidad del Departamento de la Familia la realización del estudio social pericial correspondiente para que los tribunales puedan ejercer su poder de *parens patriae* en la búsqueda del bienestar y**

**conveniencia del adoptando.** En todo caso que se presente una solicitud de adopción se solicitará al Departamento de la Familia una evaluación social pericial. **El tribunal hará una determinación a esos efectos de acuerdo a las circunstancias particulares del caso tomando en consideración las recomendaciones del informe sobre estudio pericial, pero ello no constituirá una limitación a su autoridad para decidir sobre la adopción.** 32 L.P.R.A. sec. 2699. (Énfasis suplido.)

El artículo 2 de la Ley de Adopción dispone que el procedimiento de adopción será **expedito** y **flexible**, y deberá ser tramitado en su totalidad dentro de un término **máximo de ciento veinte (120) días** a partir de la presentación de la petición de adopción hasta su resolución final. 32 L.P.R.A sec. 2699a.

El artículo 3, señala que "[e]l procedimiento de adopción no podrá consolidarse con ningún otro, excepto en aquellos casos en que haya varios adoptandos que tengan los mismos progenitores". 32 L.P.R.A. sec. 2699c. Por su parte, el artículo 9 de la Ley de Adopción, 32 L.P.R.A. sec. 2699h, establece, entre otras cosas, que en los casos en los que no se haya privado previamente de la patria potestad a los padres del adoptando, ni hayan renunciado éstos voluntariamente, se celebrará una vista plenaria a

estos efectos antes de la vista en su fondo de la segunda comparecencia; no se requerirá la presencia del adoptante. En esta vista el padre o madre a quien se pretende privar de la patria potestad deberá estar representado por abogado.[20]

Para la adjudicación de toda petición de adopción de un menor de edad o incapacitado el Departamento de la Familia someterá al tribunal un informe del estudio social pericial. Dicho informe ha de incluir lo siguiente:

> (a) **El historial social de los peticionarios, del adoptando y de su padre o padres, así como cualquier otra circunstancia material al caso.**
>
> (b) **Recomendaciones sobre si conviene o no a los mejores intereses del menor o incapacitado que éste permanezca bajo la custodia de los peticionarios y bajo la supervisión de dicha dependencia o si procede o no que se efectúe la adopción.**
>
> (c) Comentarios sobre la presencia de una o más causas o condiciones que justifiquen la privación, en su caso, de la patria potestad, según dispuestas en el Código Civil. 32 L.P.R.A. sec. 2699e. (Énfasis suplido.)

---

[20] Dicha disposición es una de carácter general que no contempla los casos en los que hay un procedimiento bajo la Ley núm. 177, *supra*.

Debemos resaltar a este punto que el legislador le impone un plazo **máximo** relativamente corto al Departamento de la Familia, **"de sesenta (60) días a partir de la fecha de la notificación de la petición"**, para cumplir con este deber. Artículo 6 de la Ley de Adopción, *supra*, 32 L.P.R.A. sec. 2699e. (Énfasis Suplido.) Asimismo, se advierte que el proceso de preparación y presentación del informe del estudio social pericial "no podrá dilatar ni interrumpir el señalamiento y celebración de la vista en su fondo de la petición de adopción". *Id*. Además, el contenido del informe es persuasivo pero no mandatorio para el tribunal, ya que éste podrá tomar en cuenta su contenido, así como las recomendaciones del trabajador social, pero "no vendrá obligado a actuar conforme a lo expresado en ellos ni a las recomendaciones contenidas en el mismo". *Id.* Dicho de otro modo, el legislador señala que el informe del Departamento no "constituirá una limitación a la autoridad judicial en el ejercicio de su poder para autorizar la adopción y para decidir lo pertinente sobre la misma". *Id.*

Por último, debemos señalar que el procedimiento de adopción contiene términos específicos para sus distintas etapas, con miras a que se termine en 120

días.[21] Además, la ley faculta al tribunal para declarar con lugar la petición de adopción, debiendo constar en autos el informe del estudio social pericial y, en los casos apropiados, el consentimiento bajo juramento, por escrito o dado en corte abierta, de aquellas personas que por ley estén llamadas a consentir a la adopción. Esta determinación se hace al socaire del principio medular del mejor interés de los menores ya que "el tribunal deberá estar convencido que la adopción garantizará el bienestar y los mejores intereses del adoptando". 32 L.P.R.A. sec. 2699h.[22]

IV.

En el presente caso el Tribunal de Primera Instancia ha permitido que se inicien procedimientos de privación de custodia y de adopción conjuntamente, **a pesar de que hay un pleito pendiente bajo la ley sobre maltrato de menores y esfuerzos razonables para la reunificación familiar**. El Tribunal de Apelaciones ha avalado este proceder. La madre de la menor a quien

---

[21] *Véanse* los términos dispuestos para cada etapa en 32 L.P.R.A. sec. 2699g y 32 L.P.R.A. sec. 2699h.

[22] De conformidad con lo dispuesto en 32 L.P.R.A. sec 2699j, "el tribunal emitirá el decreto autorizando la adopción en todo caso en que concluya que la adopción solicitada conviene al bienestar del adoptando y a sus mejores intereses. Disponiéndose, que la relación previa por vínculos de consanguinidad, afinidad o custodia provisional autorizada por el Departamento de la Familia o algún tribunal competente, será fundamental en la decisión del tribunal".

se quiere adoptar aún participa de un programa de servicios contra la adicción a drogas. Nos parece que a la luz del derecho aplicable y de las políticas públicas explicadas estas acciones son incompatibles. Son varios los criterios que nos llevan a rechazar la visión en contrario de los tribunales inferiores.

En primer lugar, ni el tribunal apelativo ni el de instancia atendieron el conflicto manifiesto entre los procedimientos y las políticas públicas discutidas. Aunque ambas leyes, la de adopción y la de maltrato, están inspiradas en el mismo principio cardinal de velar por el mejor bienestar de los menores, cada una de ellas recorre senderos distintos para lograrlo. Una pretende fomentar en lo posible la reunificación familiar en casos de maltrato, mientras que la otra persigue romper con los lazos biológicos en aras al mejor bienestar del menor. Por esta razón, era necesario que los tribunales recurridos establecieran una prelación entre las dos legislaciones. En este sentido y como hemos señalado, el interés que tienen los padres en ejercer su función de crianza tiene preeminencia sobre el de los custodios de facto o padres de crianza en adoptar a

los menores. Los tribunales no podían descartar esta relación de jerarquía entre estas políticas públicas.[23]

Debemos hacer hincapié en que ambas leyes y los procedimientos por ellas dispuestos persiguen el bienestar de los menores. A tono con esto se puede reenfocar el conflicto entre ellas para que no resulten mutuamente excluyentes. Así, si se toma en cuenta que la legislación sobre maltrato de menores y reunificación familiar lo que persigue es que **en lo posible** se reconstituya la familia luego de una situación de maltrato y que **de eso no ser posible** se coloquen en adopción a los menores, se observa un orden no sólo lógico, sino cronológico, entre estos procedimientos que resuelve el conflicto. Esto significa que en tanto se pretendan llevar los procedimientos de forma concurrente se provoca un contrasentido que no fue contemplado por el legislador. En realidad, el procedimiento de esfuerzos

---

[23] En cuanto a esto, debemos tener presentes las expresiones del Tribunal Supremo de los Estados Unidos en Smith v. Organization of Foster Families, 431 U.S. 816, 853 en el sentido de que: "según hemos resuelto, cualquier interés de libertad que pueda argüiblemente existir en la familia de crianza es significativamente más débil en casos de remoción previos al regreso del menor al padre biológico, y el balance de los intereses de debido proceso debe ser también diferente." ["As we have already held, whatever liberty interest may be argued to exist in the foster family is significantly weaker in the case of removals preceding return to the natural parent, and the balance of due process interests must accordingly be different".]

razonables no descarta la adopción, únicamente la pospone hasta que el Estado haya demostrado que pese a sus gestiones la reunificación familiar no resulta en los mejores intereses de los menores.

Diferentes disposiciones de estas leyes apoyan claramente esta conclusión. Así por ejemplo, el artículo 13 de la Ley 177 prescribe específicamente que **"[c]uando no sea posible la reunificación** será responsabilidad del Secretario[a]… promover la ubicación en hogares adoptivos" al menor. 8 L.P.R.A. sec. 444j. (Énfasis suplido.) Además, el artículo 50 de la Ley 177, 8 L.P.R.A. sec. 447s, correlativo al artículo 47 de la anterior Ley 342, establece una serie de criterios para determinar si en efecto se han cumplido los esfuerzos razonables requeridos. Del lenguaje utilizado en esta disposición y de nuestro análisis sobre el derecho de los padres a la crianza de sus hijos se desprende claramente que quien carga el peso de la prueba es el Departamento de la Familia. Se observa que el Departamento no puede remover al menor de forma permanente y colocarlo en un hogar adoptivo hasta que se demuestre que se han realizado.

Nótese que en el caso ante nuestra consideración se pretende que se rinda el informe social pericial requerido para el procedimiento de adopción aunque

todavía estén en progreso los esfuerzos razonables y el Departamento no haya demostrado que éstos se hayan completado. Siendo ello así, nos persuade el argumento de las Procuradoras de Familia en cuanto a que en estas circunstancias el informe pericial sería incompleto y resultaría en un ejercicio en futilidad. Asimismo y de acuerdo a lo antes señalado, el procedimiento de adopción sería, cuanto menos, prematuro, ya que la menor no puede ser adoptada, pues el Departamento de la Familia no ha comenzado el proceso para privar a la madre de la custodia. Claro está, tampoco se justifica hacerlo, ya que de acuerdo al artículo 50 mencionado no se ha determinado que deban de descartarse los esfuerzos de reunificación y estos esfuerzos se están llevando a cabo.

También debemos subrayar que los términos a los que están sujetas las acciones correspondientes a cada una de estas leyes son diferentes e inconsistentes entre sí. El procedimiento de adopción está diseñado para ser **expedito** y los términos para concluirlos son cortos. Por ejemplo, la Ley de Adopción dispone que el informe social pericial debe presentarse en un término de 60 días. Esto resulta claramente incongruente con los extensos plazos de 6 meses o un año que provee el

bienestar y la protección integral de la niñez para la consecución de los esfuerzos razonables.

El conflicto entre estas disposiciones se manifiesta también cuando observamos que la ley sobre maltrato de menores y esfuerzos razonables tiene **carácter público** mientras que la ley de adopción es de naturaleza **privada**. Como se desprende de <u>Vargas Crespo v. Soler de la Rosa</u>, 2003 TSPR 182,[24] en Puerto Rico hay dos procedimientos de adopción, uno público y otro privado. La vía pública se refiere precisamente al procedimiento establecido en la legislación sobre maltrato de menores y reunificación familiar. El privado es gobernado por los artículos 166a-166c del Código Civil de Puerto Rico, 31 L.P.R.A. secs. 634a-

---

[24] Allí tuvimos la oportunidad de analizar, entre otros asuntos, si procedía que el Tribunal de Primera Instancia requiriera la participación del Departamento de la Familia en un procedimiento de adopción privado, regido por las disposiciones aplicables del Código Civil y la Ley de Adopción. Resolvimos que en ese caso particular el tribunal inferior debió haberle requerido al Departamento de la Familia que participara en el procedimiento de adopción, hasta tanto se adjudicara la patria potestad. En ese caso se presentó una situación muy particular ya que el mismo día en que el Departamento presentó una solicitud de remoción y sobre custodia provisional bajo la Ley 342, la madre biológica de la menor entregó voluntariamente a su hija a una familia sustituta. Según señalamos, esto limitó la responsabilidad del Departamento de la Familia a la presentación del informe social pericial. La determinación de este Tribunal destacó que desde antes de comenzar los trámites judiciales de remoción de custodia de emergencia y de adopción, el Departamento de Familia le ofreció servicios a la madre biológica de la menor. Además supervisó por 18 meses las relaciones materno filiales.

634c y la Ley de Adopción. En otras palabras, la Ley para el bienestar y protección integral de la niñez constituye, al igual que sus antecesoras, un procedimiento de adopción, aunque controlado por el Estado.

El procedimiento público se activa una vez el Estado, representado por el Departamento de la Familia inicia una investigación, determina que se da alguna de las modalidades de maltrato y entonces presenta la correspondiente solicitud de privación de custodia ante el Tribunal de Primera Instancia. Como sabemos, esta intervención del Departamento puede desembocar tanto en la reunificación familiar como en la adopción.

Por su parte el procedimiento privado se origina en aquellas ocasiones en que los padres biológicos y los adoptantes acuden voluntariamente al tribunal e incoan la correspondiente petición de adopción. Asimismo puede surgir este tipo de acción en aquellos casos en los cuales el Estado no ha intervenido y son los adoptantes quienes requieren la intervención del tribunal para lograr la adopción de un menor.

Esta distinción resulta muy importante para nuestra controversia ya que determina el papel que desempeña el Departamento de la Familia en cada una de

las acciones. En el procedimiento privado esta entidad gubernamental tiene, como única responsabilidad, el realizar el informe social y consignar allí su parecer en cuanto a la conveniencia de la adopción. En el trámite público la función de esa agencia es mucho más compleja. Primeramente, tiene la responsabilidad estatutaria de investigar las situaciones de maltrato. Luego, debe acudir al tribunal para solicitar que se retire la custodia a los padres biológicos del menor maltratado, asumir entonces la custodia provisional de esa persona y situar al menor o menores afectados en hogares de crianza. Su participación, desde luego, no termina allí puesto que es en esta etapa donde resultan necesarios los esfuerzos razonables para la reunificación familiar. Una vez fracasan estos esfuerzos el Departamento tiene, igualmente, el deber de promover la adopción de los menores.

Como se observa, dentro del procedimiento público el Departamento de la Familia tiene un rol protagónico y específicamente en la etapa judicial adviene a la condición de **parte**. En el procedimiento privado el Departamento actúa como una parte interesada y, como vimos anteriormente, su participación está sujeta a la discreción del tribunal. Permitir que se presente una demanda de adopción coetánea al procedimiento público

bajo la Ley 177 socavaría el andamiaje antes descrito. Asimismo, de manera indirecta convertiría una acción que el legislador dispuso que fuese pública en una privada y tornaría al Estado de parte en un mero interventor.

Huelga señalar que también se ignoraría el criterio del legislador en cuanto a que en las acciones instadas al amparo de la Ley 177 los custodios tendrían derecho a ser escuchados pero no serían parte.[25] Corresponde que los recurridos soliciten su intervención en el pleito al amparo de la Ley 177 y que sea allí donde planteen su interés en la adopción de la menor. Además, permitir que se litigue la privación de patria potestad y adopción en conjunto con el caso de maltrato y reunificación familiar abre la puerta a que se considere información distinta a los criterios establecidos para determinar el éxito de los esfuerzos razonables. Por ejemplo, podría desviar la atención del tribunal, que debe concentrarse en el éxito de los esfuerzos razonables, hacia las posibles virtudes del hogar adoptivo. El procedimiento de adopción se convertiría en el primario, sacrificando

---

[25] Ya en Departamento de la Familia v. Soto, *supra*, indicamos, al interpretar la Ley núm. 75 antecesora de las leyes 342 y 177, la importancia de la distinción entre "parte" y "derecho a ser escuchado".

los rigores del procedimiento de privación de custodia.

Lo anterior también incide en el planteamiento de la peticionaria y del Departamento de la Familia en el sentido de que dicha agencia, como custodio provisional de la menor, es parte indispensable en el procedimiento de adopción, de acuerdo a la Regla 16.1 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 16.1. El tribunal apelativo consideró frívola esta alegación, porque el Departamento fue notificado del procedimiento. Sin embargo, lo que se cuestionaba era que el Departamento no fuera incluido **como parte** y no fuera emplazado como tal. La notificación que el Tribunal de Apelaciones consideró suficiente se hizo a la Unidad de Adopción, con el objetivo de que preparara el informe para cumplir con el requisito de la Ley de Adopción sobre el informe social pericial. Lo anterior resalta el conflicto que surge cuando las acciones al amparo de la Ley de Adopción y la Ley 177 son presentadas de forma concurrente. Ahora bien, la inclusión del Departamento como parte no hubiese subsanado los conflictos y contradicciones entre estos procedimientos que ya hemos analizado, por lo cual no es necesario entrar a discutir el segundo señalamiento de error de la peticionaria.

Concluimos, por tanto, que erraron los tribunales inferiores al no desestimar la petición de adopción presentada de forma paralela a un procedimiento sobre esfuerzos razonables. Correspondía al tribunal apelativo atender el conflicto entre las disposiciones referidas y evitar así un fracaso de la política pública en favor de la reunificación familiar. En este sentido, resolvemos que debe desestimarse **sin perjuicio** la demanda de adopción y privación de patria potestad presentada por los padres custodios mientras no concluyan los esfuerzos razonables requeridos por la Ley 177. Los recurridos no quedan desprovistos de remedio toda vez que pueden comparecer ante el tribunal y reclamar ser escuchados en ese trámite.

Se dictará sentencia de conformidad.


                              Liana Fiol Matta
                              Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Bárbara Estrella y Richard
Monge
      Recurridos

                       CC-2003-521   *Certiorari*

         v.


Kenia Michelle Figueroa
Guerra
      Peticionario



*SENTENCIA*


En San Juan, Puerto Rico, a 26 de marzo de 2007.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente Sentencia, resolvemos que debe desestimarse **sin perjuicio** la demanda de adopción y privación de patria potestad presentada por los padres custodios mientras no concluyan los esfuerzos razonables requeridos por la Ley núm. 177.

Lo acordó y manda el Tribunal y certifica la Secretaria del Tribunal. El Juez Asociado señor Francisco Rebollo López disiente por entender que es errónea la decisión mayoritaria de desestimar, por prematura, la petición de adopción radicada en el presente caso. Entiende, además, el Juez Asociado señor Rebollo López, que la determinación del Tribunal de Primera Instancia --avalada por el Tribunal de Apelaciones-- de consolidar los procedimientos sobre privación de patria potestad y custodia con la petición de adopción no solo es una actuación contemplada y avalada por las leyes que

regulan dicho procedimiento, y las Reglas de Procedimiento Civil, sino que es una expedita

que resulta ser en beneficio de los mejores intereses del menor de edad en controversia. Dicha decisión de consolidar, conforme el criterio del Juez Asociado señor Rebollo López, no implica, de manera alguna, que ambos procedimientos serán atendidos y resueltos de forma coetánea; meramente significa que el tribunal de instancia atenderá y resolverá, en primer lugar, el procedimiento sobre patria potestad y custodia y, del mismo ser procedente, pasará, en segundo lugar, a considerar y resolver la petición de adopción. El Juez Asociado señor Rivera Pérez se une a las expresiones emitidas por el Juez Asociado señor Rebollo López.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo